Date signed July 30, 2009



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| In re: | * | | |
| RICHARD RAY DAY, | * | Case No. 08-18259-JS | |
| Debtor | * | Chapter 7 | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| C. ANTHONY MUSE, | * | |
| Plaintiff | * | |
| vs. | * | Adv. Proc. No. 08-00719-JS |
| RICHARD RAY DAY, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### *MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING DEBT TO BE NONDISCHARGEABLE*

Before the Court are cross motions for summary judgment filed by the plaintiff,

C. Anthony Muse ("Muse") and the defendant, Richard Ray Day ("Day"). For the

reasons set forth, the plaintiff's motion will be granted, the defendant's motion will be denied and the judgment rendered against the defendant by a jury in the Circuit Court for Prince George's County, Maryland, will be determined to be nondischargeable.

## FINDINGS OF FACT[1]

1. Muse was the pastor of the Arc of Safety Christian Church ("the Church") and a candidate for the Maryland State Senate. The Church was the landlord of Day's business, Dayco, Inc., a corporation that operated a restaurant known as Eddie's Pizza. The Church owned the land that was formerly occupied by a shopping mall. Eddie's Pizza had been a tenant in the mall, and four years remained on its lease when the Church purchased the land.

2. The relationship between the Church and Eddie's Pizza was contentious. Disputes arose regarding parking spaces, late or unpaid rental payments and cigarette smoking near Church premises by customers of Eddie's Pizza.

3. Muse alleged that Day pointed and laughed when there was a fire at the Church. Day alleged that the Church conspired with Muse to impair the rights of Eddie's Pizza as a lessee.

---

[1]Certain findings of fact herein are based upon the transcript of the two-day jury trial held in the Circuit Court for Prince George's County, Maryland, prior to the filing of the defendant's bankruptcy petition.

4.  When Muse ran in the Democratic primary election as a candidate for the Maryland State Senate, Day placed signs in the windows of Eddie's Pizza supporting one Obie Patterson, the opposition candidate.  Muse viewed the signs as an insult and threatened to paint over the windows.  The Church declared the lease in default based upon a clause in the lease that prohibited improper signage.

5.  On August 10, 2006, Day filed a petition in the District Court for Prince George's County for a peace order, in which he alleged that Muse had made telephone threats to shoot Day.  The petition also alleged that Muse had threatened Day in person, to strike him with a baseball bat.

6.  Day informed the Patterson campaign that he had filed the petition for a peace order against Muse, and someone in the Patterson campaign suggested that Day inform a local newspaper, the Prince George's County *Gazette* ("the *Gazette*"). Telephone records indicated that someone at Eddie's Pizza held a conversation that lasted approximately one-half hour with a *Gazette* reporter, but Day denied that he was the one who spoke to the newspaper.  On August 17, 2006, the *Gazette* published a story about the petition.

7.  The District Court for Prince George's County denied the petition after holding a hearing.

8. On August 15, 2006, Muse filed a lawsuit in the Circuit Court for Prince George's County against Day for defamation and abuse of process, styled *Muse v. Day*, Civil complaint No. CAL-06-16771. Exhibit B to the instant complaint.

9. After a two-day jury trial on March 12-13, 2008, the jury rendered a verdict in favor of Muse against Day in the amount of $75,000. The verdict allocated $70,000 in damages to the defamation claim and $5,000 to the abuse of process claim. Day appealed to the Maryland Court of Special Appeals, which appeal is now pending.

10. On June 23, 2008, Day filed the instant Chapter 7 bankruptcy petition in this Court. On September 29, 2008, Muse filed the instant complaint seeking to have the $75,000 circuit court jury verdict determined to be nondischargeable.

11. On March 6, 2009, Muse filed the instant motion for summary judgment [P. 11]. On March 26, 2009, Day filed an opposition to that motion [P. 14], as well as his own motion for summary judgment [P. 15]. On April 1, 2008, this Court heard argument on the motions and took the matter under advisement.

## CONCLUSIONS OF LAW

1. This complaint to determine nondischargeability of debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is appropriate pursuant to 28 U.S.C. § 1409.

4

2.   The standard of review for summary judgment motions is set forth in

*Mercantile Peninsula Bank v. French (In re French )*, 499 F.3d 345, 351-2 (4th Cir.

2007), as follows:

> In bankruptcy, summary judgment is governed in the first instance
> by Federal Rule of Bankruptcy Procedure 7056, which expressly
> incorporates into bankruptcy proceedings the standards of Federal Rule
> of Civil Procedure 56.  A court may award summary judgment only
> when there is no genuine issue as to any material fact and the moving
> party is entitled to judgment as a matter of law.  *See Anderson v. Liberty
> Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986);
> *In re Apex Express Corp.,* 190 F.3d 624, 633 (4th Cir.1999); *see also*
> Fed. R. Civ. Proc. 56(c) (providing that award of summary judgment is
> appropriate  only  "if  the  pleadings,  depositions,  answers  to
> interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a matter of law").  In
> evaluating a summary judgment motion, a court "must consider whether
> a reasonable jury could find in favor of the non-moving party, taking all
> inferences to be drawn from the underlying facts in the light most
> favorable to the non-movant."  *Apex Express Corp.*, 190 F.3d at 633.  In
> so doing, a court is not entitled to either weigh the evidence or make
> credibility determinations.  *See Anderson*, 477 U.S. at 255, 106 S. Ct.
> 2505 ("Credibility determinations, the weighing of the evidence, and the
> drawing of legitimate inferences from the facts are jury functions, not
> those of a judge....").  If the moving party is unable to demonstrate the
> absence of any genuine issue of material fact, summary judgment is not
> proper and must be denied.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,
> 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986); *Honor v. Booz-Allen &
> Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004).

*Id.*  "When faced with cross-motions for summary judgment, as here, a court must

consider each motion separately on its own merits to determine whether either of the

parties deserves judgment as a matter of law." *Baron Financial Corp. v. Natanzon*, 509 F. Supp. 2d 501, 508 (D. Md. 2007) (*citing Sensormatic Security Corp. v. Sensormatic Electronics Corp.,* 455 F. Supp. 2d 399, 410 (D. Md. 2006)) (internal quotation marks omitted).

3.   Section 523(a)(6) prohibits the discharge of debts owed "for willful and malicious injury by the debtor to another entity or to the property of another entity..." 11 U.S.C. § 523(a)(6).   The Supreme Court has held that, in certain instances, collateral estoppel will apply to render nondischargeable a non-bankruptcy court judgment pursuant to Section 523. *See Grogan v. Garner*, 498 U.S. 279, 284-285, n. 11, 111 S. Ct. 654, 658, n. 11, 112 L. Ed.2d 755, 763 n. 11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).")

4.   Collateral estoppel is a doctrine of preclusion created to "foreclose [ ] the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted).   In order for collateral estoppel to apply, the "proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated;

6

(2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." *Kloth v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 355 F.3d 322, 326 (4th Cir. 2004); *see also Baron Financial Corp v. Natanzon*, 509 F. Supp.2d 501, 524 n. 39 (D. Md. 2007); *Simpson v. SunTrust Mortgage, Inc. (In re Hurst)*, ___ B.R. ___, 2009 WL 553620 (Bankr. D. Md. Feb. 26, 2009).  Collateral estoppel is applicable to dischargeability proceedings.  *Grogan v. Garner*, 498 U.S. 279, 284-5, n. 11, 111 S. Ct. 654, 658, n. 11, 112 L. Ed.2d 755, 763 n. 11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *see also Combs v. Richardson*, 838 F.2d 112, 116-117 (4th Cir. 1988) (finding collateral estoppel to apply to hold state court jury verdict for assault nondischargeable but stating that "[i]n determining whether collateral estoppel applies to bind a party to a jury's earlier verdict, the federal policies underlying discharge and its statutory exceptions require that the conditions necessary for issue preclusion be addressed with special care.").

    5.  In the context of a nondischargeability action brought pursuant to Section 523(a)(6), the plaintiff must not only prove that all of the elements of defamation and

abuse of process were litigated and adjudged in the prior judgment, but must also demonstrate that the state court judgment was necessarily based on a holding of willfulness and malice. *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006) (holding that the issue of whether plaintiff intended to injure defendant must have been litigated in the earlier judgment in order for collateral estoppel to apply).

6.    As a threshold matter, the Court has determined that the circuit court judgment was final, despite the defendant's pending appeal. A Maryland judgment is final for purposes of collateral estoppel, even when an appeal from the judgment is pending. *See Campbell v. Lake Hallowell Homeowners Ass'n,* 852 A.2d 1029, 1040, 157 Md. App. 504, 524 (2004) ("a broad consensus has emerged that the pendency of an appeal should not suspend the operation of a judgment for purposes of *res judicata* or collateral estoppel. In the words of Comment (f) to the RESTATEMENT (SECOND) OF JUDGMENTS, this is "[t]he better view.") (internal citations omitted); *see also Kissi v. EMC Mortg. Corp.*, ___ F. Supp. 2d ___, 2009 WL 1756863 (D. D.C. June 23, 2009) ("Nor can the plaintiff escape the consequences of claim preclusion because an appeal remains pending before the Maryland Court of Special Appeals"); *Warwick Corp. v. Md. Dep't of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983) (finding that to preclude application of *res judicata* to a judgment pending appeal would be

8

"laughable."). Therefore, despite the pendency of an appeal, the state court judgment is final and the instant motions for summary judgment are ripe for decision.

7. In the landmark case of *Kawaauhau v. Geiger*, the Supreme Court held that in order for the "willful" element of Section 523(a)(6) to apply, a plaintiff must show a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed.2d 90 (1998); *see also Duncan*, 448 F.3d at 729. Accordingly, for collateral estoppel to apply to the judgment at issue here, it was not sufficient that the jury in the circuit court find an intent on the part of Day to defame Muse; it was also necessary that the jury find that in defaming Muse, Day intended to damage Muse.

8. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 582 (BAP 6th Cir. 2001), applying the state law of Michigan and Kentucky, held that state court judgments for defamation were nondischargeable pursuant to Section 523(a)(6) when the defamatory statements in question constituted defamation *per se*, signifying that they were injurious by their very nature. The BAP reasoned that when a defendant makes statements that are defamatory *per se*, it is "substantially certain that harm would result." *Id*. Applying a California statute, *Maaskant v. Peck (In re Peck)*, 295 B.R. 353, 361 (BAP 9th Cir. 2003), also held that statements that were defamatory *per se* were nondischargeable pursuant to Section 523(a)(6).

9

9.  When state law does not presume intent to cause injury from statements that are defamatory *per se*, willfulness becomes a question of fact to be determined at trial. *See Barnett v. Rich (In re Rich)*, 401 B.R. 281, 288 (Bankr. S.D. Ohio  Mar. 25, 2009) (denying summary judgment to plaintiff on the issue of willfulness because Ohio did not presume intent to cause injury when statements were defamatory *per se*); *see also In re Vandergrift*, 35 B.R. 76, 78 (Bankr. D. Md. 1983) (Mannes, J.) ("Courts may assume that debtors intend the natural consequences of their acts.").  Therefore, the questions before this Court are whether or not Muse's statements were defamatory *per se,* and if so, whether this status creates a presumption of willfulness.

10.  "The determination of whether an alleged defamatory statement is *per se* or *per quod* is a matter of law."  *Shapiro v. Massengill*, 661 A.2d 202, 217, 105 Md. App. 743, 775 (1995).  A statement that ascribes conduct to a party that would adversely affect that party's "fitness for the proper conduct of his business" is actionable *per se*.  *See Hearst Corp. v. Hughes*, 466 A.2d 486, 489, 297 Md. 112, 118 (1983); *see also Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1119, 285 Md. 161, 164 (1979) ("Consistently this Court has held that words which falsely charge a person with or impute to him the commission of a crime for which he is liable to be prosecuted and punished are actionable *per se*") (*quoting Am. Stores Co. v. Byrd*, 229 Md. 5, 181 A.2d 333 (1962)).

10

11.  Day accused Muse of threatening to shoot him and to strike him with a baseball bat.  These statements were defamatory *per se*, because the threats alleged to have been made by the plaintiff reflected negatively upon his "fitness for the proper conduct of his business," both as a preacher and as a candidate for elective office.

12.  The First Amendment to the U.S. Constitution[2] has been held to limit the recovery of damages by public officials that allegedly resulted from defamatory statements concerning their official duties.  One must prove that the defendant published a defamatory statement with "actual malice," meaning "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Company v. Sullivan,* 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed.2d 686 (1964). When the subject of defamatory statements is a candidate for public office, "official conduct" means "conduct relevant to fitness for office."  *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 273, 91 S. Ct. 621, 626, 28 L. Ed.2d 35 (1971).  Accordingly, in its

---

[2]The First Amendment provides, as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; *or abridging the freedom of speech, or of the press*; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I (1791) (emphasis supplied).

11

instructions to the jury, the Circuit Court for Prince George's County held that because Day's statements related to Muse's official conduct as a public official, Muse was required to prove constitutional malice.

13.   In Maryland, when a plaintiff establishes constitutional malice, it is permissible that a "presumption of harm to reputation... arises from the publication of words actionable *per se*.  A trier of fact is not constitutionally barred from awarding damages based on that presumption in a constitutional malice case." *Shapiro*, 661 A.2d at 217; *see also Hearst Corp.*, 466 A.2d at 493 (same).

14.   The jury in the circuit court found constitutional malice and rendered a verdict that allocated $70,000 in damages for defamation against Day.  There is no indication from the transcript that the presumption of harm was rebutted. Accordingly, this Court finds that the debtor is collaterally estopped from contesting his intent to cause injury to the plaintiff.

15.   Furthermore, the debtor is collaterally estopped from contesting that he acted maliciously, as required by Section 523(a)(6).  For purposes of that section, "malice" means that a debtor's act was committed "deliberately and intentionally in knowing disregard of the rights of another."  *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995); *see also Erie Ins. Group v. Chaires (In re Chaires)*, 249 B.R. 101, 104 (Bankr. D. Md. 2000) (Derby, J.) (*quoting St. Paul Fire*

12

& *Marine Ins. Co. v. Vaughn (In re Vaughn)*, 779 F.2d 1003, 1008 (4th Cir. 1985))

("Malicious means wrongful and without cause or excuse")).[3]

16.  The defendant cited *Old Kent Bank-Chicago v. Price (In re Price)*, 123

B.R. 42 (Bankr. N.D. Ill. 1991) for the proposition that Section 523(a)(6) requires a

physical invasion.  However, a careful reading of *Price* reveals that the decision used

a "physical invasion" only as an example of a nondischargeable tort.  123 B.R. at 45

("Actions for willful and malicious injury are those brought to protect a person and

his property from intentional and unpermitted contacts *such as* assault or the

apprehension of intentional or unpermitted contacts such as battery") (emphasis

added).[4]

17.  Collateral estoppel also applies to render nondischargeable the $5,000

verdict allocated to damages for abuse of process.  Every court that has considered the

issue has held that state court judgments for abuse of process are nondischargeable

_____

[3]This definition is substantially similar to the constitutional standard of malice that Muse was required to prove in the circuit court.  To prove constitutional malice, Muse was required to prove that Day knew that the statements he made about Muse  were false or made with reckless disregard for the truth. Because the standard is substantially the same, the requisite identity of issues has been satisfied in order that collateral estoppel be found to apply to the facts of this case.

[4]The defendant has confused the physical invasion standard with the standard for Chapter 13, where Section 523(a)(6) does not apply.  In Chapter 13, actions for willful and malicious injury that result in personal injury or death are nondischargeable, pursuant to a different section of the Bankruptcy Code, namely 11 U.S.C. §1328(a)(4).

under Section 523(a)(6).  *See Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 642-44 (6th Cir. 1999) (affirming the bankruptcy court's determination of nondischargeability based upon state court jury instructions concerning abuse of process); *Papadakis v. Zelis (In re Zelis),* 66 F.3d 205, 209 (9th Cir. 1995) (sanctions imposed for filing frivolous appeal are akin to abuse of process and therefore tortious and nondischargeable); *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 485-86 (S.D. N.Y. 2003) (state court judgment for abuse of process held nondischargeable); *Marine Midland Bank, N.A. v. Huber (In re Huber)*, 171 B.R. 740, 751 (W.D. N.Y. 1994) (multiple frivolous lawsuits filed by debtor-attorney against student lender were an abuse of the judicial process and non-dischargeable under 523(a)(6)); *Thompson v. Myers (In re Myers)*, 235 B.R. 838, 845 (Bankr. D. S.C. 1998) (issues of willfulness and maliciousness had been actually litigated in state court jury trial concerning abuse of process and therefore collateral estoppel applied); *see also Garcia v. Amaranto (In re Amaranto)*, 252 B.R. 595 (Bankr. D. Conn. 2000) (entering nondischargeable judgment against debtor for abuse of process after trial in Bankruptcy Court).  Indeed, this Court (Keir, J.) has held that collateral estoppel renders nondischargeable a Rule 11 sanction entered against a debtor when the sanction was based on intent to harass and create unnecessary expense.  *Cox v. Bast (In re Bast)*, 212 B.R. 499, 504-05 (Bankr. D. Md. 1997).  The elements of Section 523(a)(6) are satisfied by the circuit

court jury's verdict sheet, which posed the question, "Do you find by a preponderance of the evidence that the Defendant willfully used the peace order process against the Plaintiff for a purpose different from the proceeding's intended purpose?"

18.  The Court finds inapposite the defendant's citation of *Sickler v. Eckroth (In re Eckroth)*, 247 B.R. 799 (Bankr. D. N.D. 2000).   In that case, there was no underlying state court judgment; rather, the case involved a trial in the bankruptcy court.   *Id.* at 800.   After trial, the bankruptcy court found no abuse of process. Because there was no holding concerning collateral estoppel, *Eckroth* is irrelevant to the instant adversary proceeding.

WHEREFORE, the $75,000 judgment entered against the debtor/defendant Richard Ray Day in the Circuit Court for Prince George's County, Maryland will be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6), and shall not be discharged by the debtor's discharge granted under 11 U.S.C. § 727.

*ORDER ACCORDINGLY.*

cc:    Lawrence R. Holzman, Esquire
        Joseph, Greenwald & Laake, P.A.
        6404 Ivy Lane, Suite 400
        Greenbelt, Maryland  20770
        Counsel for Plaintiff

        Craig L. Holcomb, Esquire
        Craig L. Holcomb, LLC
        4242 East West Highway, No. 916
        Chevy Chase, Maryland  20815
        Counsel for Defendant

        Mr. Richard Ray Day
        5139 Chalk Point Road
        West River, Maryland  20778
        Defendant

        Joel I. Sher, Esquire
        Shapiro, Sher Guinot & Sandler
        36 South Charles Street, Suite 2000
        Baltimore, Maryland  21201
        Chapter 7 Trustee

        Office of the United States Trustee
        101 W. Lombard Street
        Suite 2625
        Baltimore, Maryland  21201